IN THE COURT OF CRIMINAL APPEALS

OF TEXAS





NO. WR-75,835






Ex parte HECTOR ROLANDO MEDINA, Applicant





ON APPLICATION FOR A WRIT OF HABEAS CORPUS

IN CAUSE NO. W07-32923-S(A) IN THE 282ND DISTRICT COURT

DALLAS COUNTY






Keller, P.J., filed a dissenting opinion in which Hervey, J., joined.





 For the reasons discussed in Judge Keasler's dissenting statement, I agree that we cannot treat
the application in this case as a "non-application." (1) To those reasons, I would add another
consideration: The Court's holding will wreak havoc with non-capital habeas applications under
Article 11.07. (2) 

 Now that we have a form that must be filled out, a non-capital habeas applicant must specify
at least one ground for relief and, for each ground, fill out a portion of the form that asks for
supporting facts. (3) If a non-capital habeas applicant fails to fill out the supporting-fact section, then
his application will be dismissed. But if the applicant does fill out the portion of the form that asks
for supporting facts, but makes only conclusory statements, or in some other way fails to adequately
plead facts, then we routinely deny the application. That is, a non-capital habeas application under
Article 11.07 that looks like the application in this case results in a denial of relief rather than a
dismissal. 

 The Court says that "dismissal is appropriate" for such applications because Article 11.07
has no time limits. But it does not explain why the presence or lack of time limits would have any
bearing on the correct disposition of a habeas application, and it is not apparent to me why it would. 
If the Court is saying that such applications have, until now, been dismissed, it is patently incorrect. 
If it is saying that they will henceforth be dismissed, then it has already begun the process of
torturing the law to fit its disposition of this case. 

 Most applications are written by pro se inmates. Some of the best applications are written
by pro se inmates, but it frequently happens that we receive an application from a pro se inmate that
fails to adequately plead facts. No doubt we have received thousands of them over the years. Now
the Court has opened the floodgates for all of those applicants to claim that their earlier applications
were non-applications because they were insufficiently pled, the result being that they get to file new
applications. And, unless the Court's order means that all inadequate 11.07 applications are now to
be dismissed, then for current and future non-capital habeas applicants, we will have to grade
unmeritorious applications to decide whether the claim is invalid because of a pleading defect or,
instead, because the facts pled simply do not give rise to a valid claim for relief. (4) Deciding whether
an application is substantively unmeritorious or simply inadequately pled will not always be easy,
and may sometimes lead to hair-splitting distinctions. Moreover, it is important to recognize that
sometimes an applicant fails to plead sufficient facts because the facts are simply not on his side. 
It should not be a surprise that an applicant who has no valid basis for relief may find it difficult to
plead one.

 In the present case, the trial judge has found that some of applicant's claims sufficiently state
grounds "upon which, if proven to be true, relief could be granted." The trial judge apparently
believed the prudent course was to dismiss the application, however, because most of the claims
were not adequately pled. 

 The trial judge should not have recommended a dismissal of the application. Instead, if any
of applicant's claims were adequately pled and involved fact allegations that were disputed by the
State, the trial judge should have designated the issues of fact to be resolved and the manner in which
they would be resolved. (5) If no claims were adequately pled, then the trial judge should have so
determined, requested proposed findings of fact from the parties, and filed findings of fact and
conclusions of law. (6) Because the trial judge has not done either of these things, we should remand
this case to him for further disposition.

 I must take a moment to disagree with the assessments of Mr. Norris's conduct as "plac[ing]
his own interests above his client's" (7) and "throwing his client under the bus." (8) Mr. Norris says that
he acted in good faith in what he thought was his client's best interest. I would give him the benefit
of the doubt. (9) Based on his years of experience with numerous death penalty habeas applications, (10)
he believed that his approach would "maximize the probability" of a live hearing for his client. He
further believed that obtaining a live hearing would increase the likelihood of obtaining relief. Mr.
Norris tells us that he is familiar with the evidence, and he calls his approach "a legitimate tactical
decision." The bottom line seems to be that he thinks his client will lose if he does not get a live
hearing, so Mr. Norris has done what he can to obtain one. The fact that his plan failed to result in
a live hearing does not mean it was conceived for his own benefit instead of his client's. 

 Finally, the Legislature could enact a law that confers upon this Court the discretion to order
one of the remedies under Article 11.071, § 4A, when an attorney timely files a "skeletal" death-penalty application that does not contain any adequately pled claims. One reason that § 4A was
enacted in the first place was to give the courts some leeway in dealing with untimely writ
applications after a problem arose in a particular case. As with the original enactment of § 4A, such
a statute could be made retroactive. But, under my view (and Judge Keasler's view), this Court is
currently powerless to do anything if counsel timely files a death-penalty habeas application
attacking his conviction or death sentence but fails to adequately plead any of the claims. (11)

 I respectfully dissent.

Filed: October 12, 2011

Publish 
1. See Judge Keasler's dissent, post.
2. Tex. Code Crim. Proc. art. 11.07.
3. See Tex. R. App. P. 73.1(c) ("The person making the application must provide all
information required by the form. The application must specify all grounds for relief, and must
set forth in summary fashion the facts supporting each ground.").
4. See Judge Keasler's dissent at 2.
5. Tex. Code Crim. Proc. art. 11.071, § 9.
6. Id., § 8(b), (c).
7. See Judge Keasler's dissent at 1.
8. See Court's order at 4.
9. Mr. Norris does not give this Court the benefit of the doubt. He says, "All of the state's
arguments, not to say the obvious attitudes of judges in the trial courts and in this Court, are
manifestly designed to preserve a system of adjudicating habeas corpus applications in summary
fashion. Those arguments and attitudes disclose an unmistakable preference for denying a full and
fair hearing..." Also, "Denying [applicant] the opportunity for such a hearing is plainly the goal of
everyone who argues that he must include affidavits and legal briefing as a part of the initial habeas
application..." He says also that we are "living in a dream world" if we think paper hearings are
adequate.
10. Mr. Norris is listed in the Court's case management system as an attorney of record on at
least two such cases in which relief was granted. Ex parte Varelas, 45 S.W.3d 627 (Tex. Crim. App.
2001); Ex parte Lim, No. AP-76,593 (Tex. Crim. App. June 29, 2011)(not designated for
publication).
11. See Ex parte Graves, 70 S.W.3d 103 (Tex. Crim. App. 2002).